**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

**-vs-**                                     **Case No. 6:09-cv-1852-Orl-28GJK**

**ASSETS DESCRIBED IN "ATTACHMENT A" TO THE VERIFIED COMPLAINT FOR FORFEITURE IN REM,**

          **Defendants.**
_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **CLAIMANTS DWB HOLDING CO.'S AND DWB DEVELOPERS, LLC'S MOTION TO DISMISS THE AMENDED VERIFIED COMPLAINT AS TO ALL FUNDS SEIZED FROM THE M&I BANK, WHITNEY NATIONAL BANK, AND REGIONS BANK ACCOUNTS** (Doc. No. 61) |
| **FILED:** | **January 22, 2010** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

I. **BACKGROUND.**

The bank accounts at issue in this matter are the subject of two separate actions described below.

### A. Arizona Drug Proceeds and Money Laundering Seizure Action.

On August 22, 2008, August 26, 2008, and September 28, 2008, in connection with a drug and money laundering criminal investigation by the Drug Enforcement Agency (the "DEA"), the Internal Revenue Service (the "IRS"), and the Immigration and Customs Enforcement Agency (the "ICE") in the District of Arizona, the contents of Claimants DWB Holding Company and DWB Developers, LLC's (collectively, "DWB" or the "Claimants") bank accounts at M&I Bank ("M&I") ($24,350,221.35), Whitney National Bank ("Whitney") ($200,000.00), and Regions Bank ("Regions") ($100,000.00) (collectively, the "Bank Accounts") were respectively seized pursuant to probable cause warrants issued in the District of Arizona. Doc. No. 56-4 at ¶¶ 71, 75, 192. On November 6, 2008, in *DWB Holding Company v. United States of America, et. al.*, Case No. 6:08-cv-1881-Orl-28KRS, Doc. Nos. 1-2 (M.D. Fla. Nov. 6, 2008), DWB filed a Motion for Immediate Return of Property (the "Rule 41 Motion") with this Court as to the accounts at M&I Bank and Whitney National Bank subject to the District of Arizona seizure warrants. *Id.*[1]

In the Rule 41 Motion, DWB argued that it was entitled to an immediate return of the seized assets pursuant to 18 U.S.C. § 983, because more than sixty (60) days had elapsed from the date of the seizure without DWB having received written notice of the seizure or the filing of a civil forfeiture complaint. *Id*. at Doc. Nos. 1-2. On January 12, 2009, the Court entered an order stating:

---

[1] When a claimant asserts a due process claim through a Rule 41 motion, based on insufficient notice, a court will construe the motion as a complaint seeking equitable relief. *United States v. $70,000.00 in U.S. Currency*, 203 F.R.D. 308, 312 (S.D. Ohio 2000).

> Although Plaintiff is correct that written notice is required within sixty (60) days after the date of seizure when there is a nonjudicial civil forfeiture proceeding, 18 U.S.C. § 983(1)(A)(i), <u>Plaintiff is incorrect that such notice is required in this instance because the United States has not commenced nonjudicial forfeiture proceedings. Nonjudicial proceedings are administrative</u>. The amount seized is over $500,000.00, the threshold for giving notice contemplated in administrative proceedings of 18 U.S.C. § 983. 19 U.S.C. § 1607. Thus, because the amount seized exceeds $500,000, the [DEA] cannot initiate administrative proceedings against the funds and is therefore not required to give notice.
>
> Plaintiff also argues that because the government has not begun proceedings, has not provided notice, and has not returned the funds, its due process rights have been violated. The test to determine whether a delay in filing a forfeiture action is reasonable "involves a weighing of four factors: length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983). The seizure of Plaintiff's funds were made as part of an on-going criminal investigation, involving a drug trafficking criminal enterprise. The seizures occurred just over four (4) months ago. The funds seized are significant. The reason for no proceedings being commenced as to these seized funds is that the investigation is on-going and involves an allegedly large enterprise. Plaintiff has not shown that the seizure has caused it prejudice or the assets are wrongly retrained. *See United States v. Premises Located at Route 13*, 946 F.2d 749 (11th Cir. 1991); *United States v. Bissell*, 866 F.2d 1343 (11th Cir. 1989).

*DWB Holding Company v. United States of America, et. al.*, Case No. 6:08-cv-1881-Orl-28KRS, Doc. No. 30 (M.D. Fla. Jan. 12, 2009) (emphasis added). Thus, the Court denied the Rule 41 Motion. That same day, this Court transferred its case to the District of Arizona. *Id*. at Doc. No. 31.

On February 12, 2009, after the case was transferred to the District of Arizona, DWB moved to dismiss the case without prejudice subject "to DWB's right to refile another Rule 41 motion . . . at some later date, and the DWB's agreement to dismiss this action does not constitute a waiver of its constitutional and statutory delay arguments." *DWB Holding Company*

3

*v. United States*, Case No. 2:09-cv-102-PHX-MHM, Doc. No. 39 at ¶ 9 (D. Ariz. Feb. 12, 2009). On February 18, 2009, the United States District Court of Arizona granted the motion and dismissed the case without prejudice. Case No. 2:09-cv-102-PHX-MHM, Doc. No. 40.

On April 9, 2010, DWB and the Government filed a Motion to Approve Stipulation for Settlement Regarding the Interest of Pedro Benevides dba DWB Holding Company (the "Stipulation for Settlement"). Case No. 2:09-cv-102-PHX-MHM, Doc. No. 41. In the Stipulation for Settlement, the parties agreed that certain assets, in the amount of $99,572.65, which were seized pursuant to District of Arizona seizure warrants and related to a money laundering and drug trafficking investigation in the District of Arizona, would be returned to DWB. Case No. 2:09-cv-102-PHX-MHM, Doc. No. 41-2 at ¶¶ 1, 3, 9. The Stipulation for Settlement provides:

> 4. Shortly after the Arizona investigation began, a similar investigation was undertaken by a Task Force in the Middle District of Florida (MDFL) in Orlando and Tampa, resulting in the seizure of more than one hundred million dollars of assets, which assets represent the alleged proceeds of wire fraud violations, were allegedly involved in money laundering violations, or both.
> 5. Representative of the District of Arizona; the agencies comprising the Task Forces which seized more than forty million dollars; representatives of the Middle District of Florida; and the agencies comprising the investigative team which seized more than one hundred million dollars in that District agreed the seized funds should be included in the civil forfeiture matter undertaken in Orlando, Florida. On or about January 20, 2010, an Amended Complaint was filed in the Middle District of Florida, which included substantially all of the accounts seized by the Federal Task Force operating within the District of Arizona. Excluded from that amended complaint are the accounts [at issue in the Stipulation for Settlement].

Case No. 2:09-cv-102-PHX-MHM, Doc. No. 41-1 at ¶¶ 4-5. Pursuant to the Stipulation for Settlement, a majority of the assets seized, including the Bank Accounts at issue here were made

4

part of the Middle District of Florida civil forfeiture action. *Id*. at ¶ 8. The parties agreed the remaining assets ($99,572.65) in the District of Arizona action would be released to DWB and no forfeiture action would be commenced in the District of Arizona. *Id* at ¶ 9. On April 16, 2010, the District of Arizona entered an order granting the Stipulation for Settlement. Case No. 2:09-cv-102-PHX-MHM, Doc. No. 42.

        B.        **Middle District of Florida Ponzi/Pyramid Scheme Seizure.**

According to the United States (the "Government"), in or around August 2008, the United States Secret Service (the "USSS"), the IRS, ICE, and the St. Cloud, FL IRS-USSS Financial Task Force began investigating an on-going criminal investigation involving a wide-spread, complex financial fraud. *See* Doc. No. 56-4. The Government maintains that this on-going criminal investigation is separate and distinct from the District of Arizona action. Doc. No. 66 at ¶ 7. On October 30, 2009, the Government filed a Verified Complaint for Forfeiture In Rem (the "Complaint") regarding certain assets, including the Bank Accounts. Doc. No. 1 and Attachment "A" thereto. On that same date, the Government filed two motions for issuance of seizure warrants for the assets listed in the Complaint, including the Bank Accounts. Doc. Nos. 3-4. On November 6, 2009, the Court granted the motion and issued the seizure warrants. Doc. Nos. 7-8.

On January 20, 2010, the Government filed an Amended Verified Complaint for Forfeiture In Rem (the "Amended Complaint") and motions to seize additional assets. Doc. Nos. 56-58. In the Amended Complaint, the Government states that "[t]he conspiracy to commit wire fraud offenses that gives rise to this action is an international Ponzi/Pyramid scheme operated by [DWB and others] in which investors have been defrauded out of millions of dollars." Doc. No. 56 at 8-9. The Government maintains that the monetary transactions conducted to fund the Bank

Accounts were made in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a). Doc. No. 56 at 9. Attached to the Amended Complaint is an affidavit of Internal Revenue Service – United States Secret Service Financial Crimes Task Force Agent Noel F. Martinez, Jr. (the "Affidavit"). Doc. No. 56-4.

In the Affidavit, Agent Martinez states that the ponzi scheme involved soliciting individuals to invest in short-term investments of foreign currencies and promising a rate of return between seventy-seven and three-hundred percent. Doc. No. 56-4 at ¶¶ 5(a) – (b). Agent Martinez states that instead of investing funds in foreign currencies, such funds were used to partially pay back other investors. Doc. No. 56-4 at ¶ 5(b). Investor funds were wired directly into the M&I and Whitney accounts. Doc. No. 56-4 at ¶¶ 57, 70, 73-75. Funds were later transferred into the Regions account from a separate bank account which also received proceeds of the alleged ponzi scheme. Doc. No. 56-4 at ¶¶ 189-192.

On January 22, 2010, DWB filed a Motion to Dismiss the Amended Complaint as to All Funds Seized from the M&I Bank, Whitney National Bank, and Regions Bank Accounts (the "Motion"). Doc. No. 61. The Motion is presently before the undersigned for a report and recommendation.

## II. **THE MOTION**.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, DWB argues that the Amended Complaint should be dismissed as to the Bank Accounts because: 1) the Government's delay between seizing the Bank Accounts and filing the Complaint violates DWB's due process rights under the Fifth Amendment; and 2) the Government violated the notice requirements of 18 U.S.C. § 983(a)(1)(A)(i), by not furnishing DWB notice of the seizure within sixty (60) days. Doc. No. 61. DWB maintains that the Court should weigh the four factors set forth *United States*

*v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983), and find in DWB's favor that the Government's delay was substantial, there was no good reason for the delay, DWB promptly asserted its rights to two of the Bank Accounts, and DWB does not need to show actual prejudice. Doc. No. 61 at 9-17. After weighing those factors, DWB maintains that Court should find that the Government's delay violated DWB's due process rights and dismiss the Amended Complaint as to the Bank Accounts. *Id*. DWB also argues that 18 U.S.C. § 983(a)(1)(A)(i) imposes a strict notice requirement upon the Government, and the failure to provide DWB with notice of the seizure within sixty (60) days warrants dismissal and return of the Bank Accounts to DWB. Doc. No. 61 at 17-20.[2] Thus, DWB argues that "[t]wo affirmative defenses – the Government's unconstitutional delay in filing this civil forfeiture action and its failure to give notice pursuant to 11. U.S.C. § 983 – appear on the face of the Amended Complaint, and require its dismissal." Doc. No. 61 at 9.

### III. THE RESPONSE.

On February 5, 2010, the Government filed a response (the "Response") to the Motion. Doc. No. 66. The Government raises three arguments in opposition to the Motion: 1) DWB's due process rights were not violated because the delay was reasonable; 2) the notice requirements of 18 U.S.C. § 983(a)(1)(A)(i), do not apply to a civil judicial forfeiture action; and 3) DWB's due process argument is premature. Doc. No. 66 at 1-21. As to DWB's due process argument, the Government agrees that the four factors set forth in *United States v. $8,850 in U.S. Currency*, 461 U.S. 555 (1983) apply, but the Government maintains that those factors weigh in the Government's favor. The Government asserts: the length of delay was reasonable given the facts of this case; the reason for the delay was the on-going criminal investigation regarding a

---

[2] This is the same argument DWB raised in the Rule 41 Motion.

7

"large-scale, complex financial fraud with thousands of domestic and international victims"; DWB did not promptly assert its right to a hearing; and DWB has conceded that it has suffered no prejudice by the delay. Doc. No. 66 at 13-21.

## IV. **THE REPLY.**

On February 26, 2010, after being granted leave, DWB filed a reply (the "Reply") to the Response. Doc. No. 125. In the Reply, DWB raises four arguments: 1) the notice requirements of 18 U.S.C. § 983(a)(1)(A)(i) apply to this case and the amount of the Bank Accounts should not be aggregated under the statute; 2) the on-going criminal investigation does not justify the fourteen (14) month delay because the Government could have filed a motion to stay the case pursuant to 18 U.S.C. § 981(g)(1); 3) DWB promptly asserted its right to a hearing; and 4) the Government's re-seizure of the Bank Accounts in connection with the seizure warrants issued by this Court is irrelevant. Doc. No. 125.

## V. **ANALYSIS.**

### A. Rule 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or counterclaim may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). To satisfy the Rule 8 pleading requirements, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his/her 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Plaintiff must plead enough facts to state a plausible, and not merely conceivable, basis for the claim. *Id.*

Civil forfeiture actions require a heightened standard of pleading, wherein a plaintiff must "state sufficient detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp'l Admiralty and Maritime Claims R. G(2)(f) (2010). "[T]he complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp'l Admiralty and Maritime Claims R. E(2)(a) (2010).

Matters outside the pleadings and the exhibits attached thereto should generally not be considered when a court decides a Rule 12(b)(6) motion to dismiss. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). If the parties submit evidence outside the pleadings, and if it is necessary for a court to consider that evidence, the motion to dismiss should be converted into a motion for summary judgment. *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984).

"An affirmative defense may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim, but only if the defense is apparent on the face of the complaint." *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1444, 1146 n. 3 (11th Cir. 1985). In this case, although DWB asserts that both of its affirmative defenses are apparent on the face of the Amended Complaint,

the undersigned recommends that the Court find that only the Section 983(a)(1)(A)(i) affirmative defense is ripe for determination on the face of the Amended Complaint. DWB's affirmative defense asserting a due process violation requires the Court to weigh and consider facts and circumstances outside the pleadings. DWB has not established a sufficient factual basis, through admissible evidence, affidavits and/or testimony, for the Court to treat the Motion as a motion for summary judgment and discovery has yet to begin in the case.[3] Therefore, the Court declines to convert the Motion into a request for summary judgment. Accordingly, the undersigned recommends that the Court find that DWB's due process defense is not appropriate for a Rule 12(b)(6) motion to dismiss.

Having carefully reviewed the Amended Complaint and the Affidavit attached thereto, the undersigned recommends that the Court find it sufficiently states with particularity the circumstances under which the forfeiture claim arises as to the Bank Accounts. The Amended Complaint and Affidavit set forth detailed facts supporting a reasonable belief that the Government will be able to meet its burden of proof at trial. *See* Doc. Nos. 56, 56-4. Accordingly, to the extent the Motion generally requests dismissal for failure to state a claim for relief, the undersigned recommends that Court **DENY** the Motion.

### B. Forfeiture Actions and Due Process.

There are three types of forfeiture actions recognized under federal law: 1) Administrative forfeiture or "non-judicial" forfeiture; 2) Civil forfeiture or "judicial" forfeiture; and 3) criminal forfeiture. *See* Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 1-4 (2007). Criminal forfeiture proceedings are not applicable to the instant matter.

---

[3] For example, DWB states that the Government "has not excuse for the delay," but cites not evidence to support that statement. Doc. No. 61 at 3.

### 1. Administrative "Non-Judicial" Forfeiture.

Administrative forfeiture, also called "non-judicial" forfeiture, is a procedure where a governmental agency such as the DEA or IRS, is permitted to forfeit property "without any judicial involvement if it sends proper notice of the forfeiture action to potential claimants and no one files a claim." Cassella at § 4-1. Administrative forfeiture only applies to property valued at $500,000.00 or less. 19 U.S.C. § 1607.

18 U.S.C. § 983(a)(1)(A)(i) provides:

> [I]n any nonjudicial civil forfeiture proceeding under a civil forfeiture statute . . . such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure.

*Id.* (emphasis added). Thus, in administrative ("nonjudicial") forfeiture cases, the seizing agency is required to provide notice to potential claimants within sixty (60) days of the seizure. *Id.* If the agency does not send the notice within sixty (60) days: "the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time." 18 U.S.C. § 983(F).[4]

### 2. Civil "Judicial" Forfeiture.

Civil forfeiture proceedings, also known as judicial forfeiture, occur when the Government files a civil action *in rem* in an appropriate District Court against the subject property. 19 U.S.C. § 983(a)(4)(A); *see also* Cassella § 1-4c. Thereafter, "any person claiming an interest in the seized property may file a claim asserting such person's interest in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims. . . ." 19 U.S.C.

---

[4] After having been properly noticed, a person wishing to make a claim to the seized property must notify the appropriate agency official. 18 U.S.C. § 983(a)(2)(A). Within ninety (90) days of the person filing the claim, the Government must file a complaint for civil judicial forfeiture in the district court. 19 U.S.C. 983(a)(3)(A). If the Government fails to file a civil judicial forfeiture complaint within ninety (90) days, after the person files a claim with the agency, the Government must release the property and is barred from seeking further action to forfeit the property. 18 U.S.C. § 983(a)(3)(B).

§ 983(a)(4)(A). The sixty (60) day notice requirement imposed in administrative forfeiture or non-judicial forfeiture proceedings does not seem applicable to cases where the Government files a civil or judicial forfeiture action without first attempting administrative forfeiture. *See* Cassella § 7-4; *see also United States v. One 1993 Cadillac Seville STS*, 2003 WL 1462243 at *3 (finding defective administrative notice does not affect civil forfeiture proceeding because they are separate proceedings). The plain language of Section 983 supports this conclusion because it contains no requirement that before filing a civil forfeiture action, the Government must first attempt administrative forfeiture. 18 U.S.C. § 983. Moreover, property valued in excess of $500,000.00 is not subject to administrative forfeiture and must be forfeited under civil or criminal proceedings. *See* 19 U.S.C. § 1607. Thus, the undersigned recommends that the Court find that the sixty (60) day notice provisions contained in 18 U.S.C. § 983(a)(1)(A)(i) only applies to administrative forfeiture proceedings. Accordingly, to the extent the Motion requests dismissal as to DWB's affirmative defense of 18 U.S.C. § 983(a)(1)(A)(i), the undersigned recommends that Motion be **DENIED**.

In civil forfeiture proceedings, due process considerations determine whether a complaint *in rem* was timely filed. In *United States v. $8,850.00 in U.S. Currency*, 461 U.S. 555 (1983), the United States Supreme Court adopted the four factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972) for determining whether the Government's eighteen (18) month delay in filing civil forfeiture proceedings violated the claimant's due process rights. *$8,850.00*, 461 U.S. at 556. In *$8,850.00 in U.S. Currency*, the Government filed a forfeiture complaint and the claimant answered, admitting the factual allegations, but asserted an affirmative defense that the dilatory processing of her petition for remission constituted a violation of the claimant's due

process rights. 461 U.S. at 560-61. The District Court held a bench trial and declared the currency forfeited. *Id*. at 561.

The United States Supreme Court held that a court confronted with a due process challenge to the Government's delay in filing a civil forfeiture proceeding must weigh the following four factors: 1) the length of the delay; 2) the reason for the delay; 3) the person's assertion of right to the property; and 4) prejudice to the person caused by the delay. *Id*. at 564. The United States Supreme Court stated:

> [N]one of these factors is a necessary or sufficient condition for finding unreasonable delay. Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case.

*Id*. at 565. Consideration of the four factors would necessarily require the Court to consider facts and circumstances outside the pleadings which are not supported by affidavit or other admissible evidence. Accordingly, the undersigned recommends that the Court find DWB's due process defense is not appropriate for a Rule 12(b)(6) motion and there is insufficient evidence at this time to convert the Motion into a motion for summary judgment. Thus, the undersigned recommends that the balance of the Motion be **DENIED**.

## VI. CONCLUSION.

Based on the forgoing, the undersigned **RECOMMENDS** that the Court:

1. **DENY** the Motion (Doc. No. 61); and
2. Direct DWB to file an answer within twenty-one (21) days.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** at Orlando, Florida on May 11, 2010.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

**Copies to:**
**Presiding District Judge**
**Counsel of Record**
**Unrepresented Parties**